UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MN THEATERS 2006 LLC,<br><br>    Plaintiff**,**<br><br>v.<br><br>GRUPO CINEMEX, S.A. de C.V.,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT** |

  Plaintiff MN Theaters 2006 LLC ("Plaintiff", "MN Theaters", or "Landlord"), upon knowledge of its own conduct and otherwise upon information and belief, and by its undersigned attorneys, alleges for its complaint against Defendant Grupo Cinemex, S.A. de C.V. ("Defendant" or "Guarantor") as follows:

## NATURE OF THE ACTION

  1. This action arises out of two guaranties provided in August 2017 by Defendant—a leading operator of movie theaters in Mexico with a presence throughout Latin America and in the United States—to induce Plaintiff to enter into two corporate leases with Defendant's United States subsidiary, which now operates as CB Theater Experience, LLC ("CB Theater" or "Tenant").  Those leases were for two movie theaters located in Minnesota (the "Leases").

  2. Under the Guaranties (defined below), Defendant committed that it would guarantee the performance and payment of Tenant's obligations under the Leases in the event that Tenant failed to honor those obligations.  Under the Guaranties, Defendant submitted to the jurisdiction of the courts located in New York, including this Court, for any litigation arising out of the Guaranties.

3. In April 2020, CB Theater (along with two other subsidiaries of Defendant) filed for bankruptcy in Florida and took steps to dishonor and breach its obligation under the Leases, including rejecting the Leases and ceasing rent payments. Upon information and belief, Defendant caused CB Theater to take these actions.

4. As a result, pursuant to the unambiguous terms of the Guaranties, Defendant is now responsible for CB Theater's obligations under the Leases. In particular, Defendant is obligated, among other things, (a) to pay the rent that would otherwise be due on both theaters for the remaining term of the Leases, (b) to make improvements to the theaters that CB Theater had committed to make in the Leases, (c) to pay all expenses associated with operating and maintaining the theaters under the Leases, and (d) to pay all Enforcement Costs (defined below). These obligations total over $56 million, which Defendant is currently obligated to pay to Plaintiff.

5. Beginning in June 2020, Plaintiff made efforts to obtain payment from Defendant, including by issuing a demand letter despite being under no obligation to provide notice or demand under the Guaranties. Defendant has refused to respond to Plaintiff's demand letter in writing. Moreover, Defendant has refused to honor its contractual obligation under the Guaranties to provide information about its financial condition to Plaintiff—information that would allow Plaintiff to collect the money it is owed.

6. After weeks of ignoring the demand letter, the parties held a telephonic conference with Plaintiff in which Defendant—which, in Mexico alone, owns more than 300 movie theater locations in nearly 100 cities—stated that it did not have sufficient assets to pay Plaintiff the amounts owed under the Guaranties and threatened to place *itself* in an insolvency proceeding in Mexico to avoid paying this debt. Only a few weeks earlier, however, in a filing made in the bankruptcy court, CB Theater—which is owned and controlled by Defendant—stated that

Defendant stood ready to make an equity investment of up to $30 million in the debtors in the Florida bankruptcy (each of which, including CB Theater, are Defendant's direct or indirect subsidiaries), which would be in addition to the nearly $11.6 million in debtor-in-possession financing that Defendant has already provided to the debtors since the bankruptcy commenced. In effect, Defendant has made clear that it not only does not intend to make good on its obligations, but it will actively avoid doing so by, among other things, hiding relevant information and by relying on its location in Mexico.

7. Accordingly, Plaintiff has been forced to file this action for breach of contract and declaratory judgment, and to seek prejudgment attachment of Defendant's assets to secure its right to payment (which is addressed by motion submitted concurrently herewith).

## THE PARTIES

8. Plaintiff is a limited liability company organized and existing under the laws of Minnesota. It is wholly owned by iStar Inc., a corporation organized and existing under the laws of Maryland with its principal place of business in New York. Therefore, Plaintiff is a citizen of Maryland and New York.

9. Defendant is a *sociedad anónima de capital variable* organized and existing under the laws of Mexico with its principal place of business in Mexico. Therefore, Defendant is a citizen of Mexico.

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between a citizen of a State and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. The Court has personal jurisdiction of Defendant because Defendant consented to jurisdiction in this court under Section 13(a) of each of the Guaranties.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

### I. THE LEASES AND THE GUARANTIES

13. On August 22, 2017, Plaintiff entered into two leases with Cinemex Stratford LLC ("Cinemex Stratford"). The leases were for the use of two premises as movie theaters.

14. One lease concerns the real property having an address commonly known as 14401 Burnhaven Drive, Burnsville, MN 55306 (identified in the lease as located at 801 County Road 42 W, Lot 2 Block 1, Burnsville Center 2nd Addition, Burnsville, Dakota County, MN 55337), as amended (the "Odyssey Lease") (attached as Exhibit A).

15. The other lease concerns the real property having an address commonly known as 3450 East Circle Drive N.E., Rochester, MN 55906, as amended (the "Chateau Lease") (attached as Exhibit B).

16. On August 22, 2017, Defendant provided Plaintiff with a guaranty of Cinemex Stratford's obligations under the Odyssey Lease (the "Odyssey Guaranty") (attached as Exhibit C).

17. On August 22, 2017, Defendant provided Plaintiff with a guaranty of Cinemex Stratford's obligations under the Chateau Lease (the "Chateau Guaranty" and with the Odyssey Guaranty, the "Guaranties") (attached as Exhibit D).

18. On February 8, 2019, with the consent of all relevant parties, the Odyssey Lease and the Chateau Lease (together, the "Leases") were assigned to CB Theater under an assignment and

assumption of the Odyssey Lease and an assignment and assumption of the Chateau Lease (together, the "Assignments") (attached as Exhibits E-F).

19. Under each of the Assignments, Defendant reaffirmed its obligations under the Guaranties and that it shall "continue to be liable under the Guarant[ies]." Exs. E, F at 1, 5.

### A. Relevant Lease Terms

20. The Leases were set to expire on September 30, 2032, unless extended. Exs. A, B at 1, § 4.

21. The Leases are "absolutely-net" leases. *Id.* at §§ 5(b)-(c), 7(a).

22. Section 5 of each of the Leases provides that "it is the intention of Landlord and Tenant that the Fixed Rent payable by Tenant to Landlord . . . shall be absolutely net of all costs and expenses incurred in connection with the management, operation, maintenance, repair and replacement of the Premises in accordance with [the] Lease[s]," excluding only capital repairs and replacements. *Id.* at §§ 5(b), 9(b).

23. Section 7 of each of the Leases provides that "[i]n order that such Rent shall be absolutely net to Landlord, Tenant shall pay when due, and save Landlord harmless from and against any and all Claims, costs, charges and expenses attributable to the Premises," except for capital repairs and replacements, "and any part thereof . . . including each fine, fee, penalty, charge (including governmental charges), assessments, sewer rent, Impositions, insurance premiums, . . . utility expenses, carrying charges, costs, expenses and obligations of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, the payment for which Landlord or Tenant is, or shall become liable by reason of any rights or interest of Landlord or Tenant in, to or under the Premises or this Lease or in any manner relating to the ownership, leasing, operation, management, maintenance, repair, rebuilding use or occupation of

the Premises, or of any portion thereof, and the payment of all of Landlord's and Mortgagee's legal fees and expenses in any way related to the enforcement, interpretation, or any consent, approval or other action required or desired to be taken by such parties related to this Lease or the Premises." *Id.* at § 7(a).

24. The Leases each define "Rent" to include "all Fixed Rent and Additional Rent payable by Tenant in accordance with this Lease." *Id.* at § 5(a)(ii).

25. "Fixed Rent" is $66,666.67 per month for the Chateau Lease and $133,333.33 per month for the Odyssey Lease, payable on the first day of each month. *Id.* at 1.

26. "Additional Rent" is "all amounts, liabilities and obligations other than Fixed Rent which Tenant assumes or agrees to pay under this Lease to the Landlord or others." *Id.* at 2.

27. In addition, under each of the Leases, CB Theater was required to cause "the lobby and related improvements to be modified and refreshed, and thereafter maintained" on or before July 31, 2022. *Id.* at § 2(c).

### B.  The Guaranties Are Guaranties of Payment

28. In each of the Guaranties, Guarantor agrees that it is a primary obligor of the Leases and "absolutely, unconditionally and irrevocably guarantees to Landlord the prompt and complete payment and, in the case of non-pecuniary obligations, performance, of all of the Guaranteed Obligations . . . in full, when and as the same shall become due, whether on any due date or performance date, or upon demand or otherwise." Exs. C, D at § 1. The Guaranties each provide that they constitute agreements "to pay money and to act in the first instance and [are] not to be construed as a contract of indemnity or a guarantee of collectability." *Id.*

29. In addition, each of the Guaranties provides that "Landlord may enforce [the] Guaranty without the necessity at any time of resorting to or exhausting any other remedy or any other security or collateral and without the necessity of proceeding against Tenant." *Id.* at § 3(d).

30. Each of the Guaranties provides that the "Guaranteed Obligations" include, among other things: (i) "all of the indebtedness, liabilities and obligations of every kind and nature of Tenant to Landlord . . . including timely full payment of all Rent," (*i.e.*, Fixed Rent and Additional Rent) and "all interest fees, costs and expenses due Landlord after the filing of a bankruptcy petition by or against Tenant regardless of whether such amounts can be collected during the pendency of the bankruptcy proceedings," as well as "all Enforcement Costs," as defined in Section 8. *Id.* at § 1(a).

31. Section 8 of each of the Guaranties provides that if, *inter alia*, (i) the Guaranties are "placed in the hands of an attorney for collection or is collected through any legal proceeding, (ii) an attorney is retained to represent Landlord in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under [the] Guarant[ies] or the Lease[s]," or (iii) "an attorney is retained to represent Landlord in any other legal proceedings whatsoever in connection with this Guaranty or the Lease," the Guarantor shall pay upon demand "all reasonable and documented attorney's fees, costs and expenses, including, court costs, filing fees, recording costs, expenses of foreclosure, title insurance premiums, survey costs, minutes of foreclosure, and all other reasonable and documented out-of-pocket costs and expenses actually incurred in connection therewith," all of which are defined as "Enforcement Costs." *Id.* at § 8.

32. Each of the Guaranties provides that the "Guarantor shall remain liable for all Guaranteed Obligations regardless of the disallowance or reduction of all or any part of Landlord's claim for such Guaranteed Obligations in any proceeding involving Tenant under Title 11, United

States Code or any similar statute." *Id.* at § 1(b).

## II. THE EVENTS OF DEFAULT

33. On April 1, 2020, CB Theater failed to pay rent due for April 2020.

34. On April 7, 2020, MN Theaters sent two notices of default to CB Theater, one under each of the Leases (the "Notices of Default") (attached as Exhibits G, H).

35. The Notices of Default stated that "Tenant has defaulted on its obligation to timely pay Rent for the month of April, 2020 pursuant to paragraph 5 of the Lease[s]" and that "such default, if not cured within 5 days after delivery of this notice, shall become an Event of Default." Exs. G, H at 1.

36. The Notices of Default stated further that Landlord reserves its rights "to notify or exercise its remedies for any other or additional breaches or Events of Default that may currently exist or may subsequently arise" and "to terminate Lease possession, accelerate future rent and recover attorneys' fees," and that nothing in the Notices of Default waived any of Landlord's rights or remedies under the Leases or Guaranties. *Id.*

37. CB Theater did not respond to the Notices of Default and CB Theater did not cure the defaults, which resulted in an Event of Default under each respective Lease.

38. On April 26, 2020, CB Theater filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Miami Division in an action captioned *In re CB Theater Experience LLC.,* No. 20-14699-LMI (Bankr. S.D. Fla.), which is now jointly administered with two other cases as an action captioned *In re Cinemex USA Real Estate Holdings, et al.*, Case No. 20-14695-LMI (Bankr. S.D. Fla.).

39. On April 30, 2020, CB Theater filed a motion to reject the Leases, which rejection

constitutes a material breach of CB Theater's obligations under the Leases, pursuant to Section 365(a) of the Bankruptcy Code.

40. In its motion, CB Theater represented to the bankruptcy court that the theaters on the premises subject to the Leases (the "Premises") do not fit into its reorganization plans. In other words, CB Theater has abandoned the Premises and has made clear that such abandonment is permanent.

41. The bankruptcy court granted CB Theater's request to reject the Leases on an interim basis on May 8, 2020.

42. The bankruptcy court granted CB Theater's request to reject the Leases on a final basis on June 1, 2020.

43. On May 1, 2020 CB Theater failed to pay rent due for May 2020.

44. On June 1, 2020 CB Theater failed to pay rent due for June 2020.

45. On July 1, 2020 CB Theater failed to pay rent due for July 2020.

46. CB Theater has yet to pay rent due for April, May, June, or July 2020.

47. CB Theater's failure to pay April rent, failure to pay May rent, failure to pay June rent, and failure to pay July rent, and CB Theater's rejection of the Leases each constitute separate material breaches of the Leases by CB Theater that resulted in Events of Default, each of which have injured MN Theaters.

### III.   THE AMOUNTS OWED AND DEMAND FOR PAYMENT

48. Under the Leases, upon Tenant's material breaches, Landlord is entitled to, among other things, unpaid Rent earned and not yet earned for the balance of the loan term, subject to certain adjustments.

49. On June 4, 2020, Plaintiff notified Defendant in writing that, in light of the foregoing

breaches of the Leases and, Defendant owed $56,318,225.94 (the "Required Payment") under the Guaranties.  Plaintiff provided Defendant with a detailed calculation of the Required Payment and demanded immediate payment (attached as Exhibit I).

50. In addition, Plaintiff requested "a meeting on June 15, 2020 (to be conducted by video) with Guarantor and its officers to discuss Guarantor's affairs and finances and to review Guarantor's most up-to-date financial information."  Ex. I at 3.  That request was made pursuant to Section 3(i) of each of the Guaranties, which provides that "[u]pon ten (10) days' prior written notice, [ ] Guarantor will permit Landlord and its professional representatives to visit [ ] Guarantor's offices, and discuss [ ] Guarantor's affairs and finances with appropriate officers, and will make available such information as Landlord may reasonably request bearing on [ ] Guarantor, the Premises or the Lease[s]."  Exs. A, B at § 20(c).

51. On June 24, 2020, the parties held a telephonic conference during which Defendant stated that it did not have sufficient assets to pay the Required Payment and threatened to place itself into insolvency proceedings in Mexico to avoid doing so.

52. As of the date of this filing, Defendant has refused to pay the Required Payment.

53. In addition, Defendant has refused to conduct a meeting pursuant to Section 3(i) of the Guaranties.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

54. Plaintiff repeats and realleges each allegation in paragraphs 1 through 53 above as if fully set forth herein.

55. The Odyssey Lease is subject to the Odyssey Guaranty.

56. Pursuant to the Odyssey Guaranty, Defendant is a primary obligor for CB Theater's obligations under the Odyssey Lease.

57. The Odyssey Lease and Odyssey Guaranty are binding agreements.

58. Plaintiff has fulfilled all of its obligations under the Odyssey Lease and Odyssey Guaranty.

59. CB Theater defaulted on its obligations under the Odyssey Lease.

60. Defendant is required to pay at least $35,881,865.43 to Plaintiff pursuant to the Odyssey Guaranty.

61. Defendant has failed to pay this amount, and therefore has breached the Odyssey Guaranty.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

62. Plaintiff repeats and realleges each allegation in paragraphs 1 through 53 above as if fully set forth herein.

63. The Chateau Lease is subject to the Chateau Guaranty.

64. Through the Chateau Guaranty, Defendant is a primary obligor for CB Theater's obligations under the Chateau Lease.

65. The Chateau Lease and Chateau Guaranty are binding agreements.

66. Plaintiff has fulfilled all of its obligations under the Chateau Lease and Chateau Guaranty.

67. CB Theater defaulted on its obligations under the Chateau Lease.

68. Defendant is required to pay at least $20,436,360.51 to Plaintiff pursuant to the Chateau Lease.

69. Defendant has failed to pay this amount, and therefore has breached of the Chateau Guaranty.

**THIRD CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT AS TO PLAINTIFF'S ENTITLEMENT TO ENFORCEMENT COSTS UNDER THE GUARANTIES — 28 U.S.C. § 2201)**

70. Plaintiff repeats and realleges each allegation in paragraphs 1 through 53 above as if fully set forth herein.

71. The Guaranties provide that Defendant is obligated to pay all Enforcement Costs to Plaintiff on demand.

72. Plaintiff has incurred Enforcement Costs and will incur additional Enforcement Costs, in connection with, *inter alia*, this action and *In re Cinemex USA Real Estate Holdings, et al.*, Case No. 20-14695-LMI (Bankr. S.D. Fla.).

73. Upon information and belief, Defendant is refusing to pay Plaintiff Enforcement Costs that have been incurred and will refuse to pay additional Enforcement Costs.

74. Therefore, an actual, present, and justiciable controversy exists between the parties as to whether the Guaranties entitle Plaintiff to such Enforcement Costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff is entitled to judgment as against Defendant:

(i) that Defendant breached the Guaranties;

(ii) ordering Defendant to pay Plaintiff damages for breach of the Guaranties in an amount to be determined at trial, but in an amount no less than $56,318,226.94, with pre- and post-judgment interest thereon;

(iii) declaring that Plaintiff is entitled to recover Enforcement Costs from the Defendant;

(iv) awarding Plaintiff all attorney's fees and other costs associated with this action; and

(v) awarding any other and further relief that the Court deems just and proper.

Dated: July 24, 2020
      New York, New York

MILBANK LLP

_____
Scott A. Edelman
Jed M. Schwartz
Joseph J. Kammerman
55 Hudson Yards
New York, New York 10001
Tel: (212) 530-5000
SEdelman@milbank.com
JSchwartz@milbank.com
JKammerman@milbank.com

*Attorneys for Plaintiff MN Theaters 2006 LLC*